**VENABLE LLP**
Allison B. Gotfried (ID# 072292014)
Nicholas M. Reiter (admitted *pro hac vice*)
Leonard L. Gordon (admitted *pro hac vice*)
151 West 42nd Street, 49th Floor
New York, New York 10036
Tel.: (212) 370-6227
Fax: (212) 307-5598
ABGotfried@venable.com
NMReiter@venable.com
LLGordon@venable.com

*Counsel to Defendants Ankora Fuels, LLC, John Barbarise III, Ankora Marine Holdings, LLC, Ankora Marine Transport, LLC, Diane Joseph LLC, and Stephen Blanche LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

PLAZA MARINE, INC.,

Plaintiff,

v.

ANKORA FUELS, LLC; ANKORA MARINE TRANSPORT, LLC; DIANE JOSEPH LLC; STEPHEN BLANCHE LLC; ANKORA MARINE HOLDINGS, LLC; JOHN BARBARISE III; and ZACHARY BARBARISE,

Defendants,

and

ANKORA FUELS, LLC,

Counter-Claim Plaintiff,

v.

PLAZA MARINE, INC., PETER PROSCIA, and WILLIAM GOTIMER,

Counter-Claim Defendants.

Civil Action No. 3:24-cv-08728-GC-JTQ

Hon. Georgette Castner, U.S.D.J.
Hon. Justin T. Quinn, U.S.M.J.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6) AND MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FRCP 12(c)**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

PRELIMINARY REPLY STATEMENT ........ 1

REPLY ARGUMENT ........ 3

- I. Plaintiff Doubles Down on Labels, Not Facts ........ 3
- II. Plaintiff's Misappropriation Theory Relies On Speculation, Not Plausible Inferences ........ 5
  - A. Zachary Barbarise's Phone Calls with John Barbarise ........ 6
  - B. The Allegedly Inevitable Disclosure of Trade Secrets ........ 8
- III. The Tortious Interference Claims Fail Because Plaintiff Pleads Conclusions, Not Tortious Conduct or Causation ........ 10
  - A. [redacted]: No Agreement, No Terms, No Timing, No Causation ........ 10
  - B. [redacted]: "Deterred" Is Not Tortious Conduct ........ 11
  - C. [redacted]: "Purposefully Failed to Secure a Deal" Is Not Enough ........ 13
- IV. Plaintiff's Footnote Does Not Address the Group Pleading Defects ........ 14
- V. The Contract-Based Claims Should Be Dismissed ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................ 8

*DelphX Corp. v. Fondren*,
600 F. Supp. 3d 540 (E.D. Pa. 2022) ........................................ 13

*Fora Fin. Holdings, LLC v. Dream Data Servs., LLC*,
2023 WL 6049835 (D.N.J. 2023). ........................................ 9

*Liberty Mut. Ins. Co. v. Gemma*,
301 F. Supp. 3d 523 (E.D. Pa. 2018) ........................................ 13

*Longmeadow One Solar LLC v. Trina Solar Co*.,
No. 24-03223 (GC) (JBD), 2025 WL 2476522 (D.N.J. Aug. 28, 2025) ........................................ 15

*Oakwood Lab'ys v. Thanoo*,
999 F.3d 892 (3d Cir. 2021) ........................................ 5

*Osteotech, Inc. v. Biologic, LLC*,
No. 07-cv-1296 (JAP), 2008 WL 686318 (D.N.J. Mar. 7, 2008) ........................................ 8

## PRELIMINARY REPLY STATEMENT

Instead of pointing the Court to well-pleaded facts, Plaintiff emphasizes the case's procedural history. That is telling. Whether *some* of the Defendants previously answered the original complaint is irrelevant to the Rule 12 analysis, especially where the Amended Complaint added four entirely new defendants and new causes of action.

To defeat a Rule 12 motion, a plaintiff must cite factual allegations in the complaint, not bald assertions, the length of time a case has been pending, or tortured interpretations of a prior Rule 15 decision that allowed an amended complaint. If generalized allegations of trade-secret theft, unsupported by the requisite factual detail, were enough to survive dismissal simply because a case has been pending for some time, any plaintiff could burden a new competitor with costly discovery based on little more than suspicion, labels, and accusations. Rule 12 requires more before imposing the expense, burden, and competitive disruption of discovery.

Plaintiff tries to sidestep this well-established rule by relying upon its adjective-laden allegations in the Amended Complaint—nothing more. Defendants are not demanding proof or urging a "summary judgment" argument here. All well-pleaded *facts* are presumed true at the motion to dismiss stage. But summarily labeling something "proprietary," or claiming that a defendant "tortiously interfered" with a business partner are not well-pleaded facts. Those are conclusions,

devoid of factual allegations. Rule 12 requires more than that.

Boiled down, Defendants' motion challenges Plaintiff's failure to plead facts Plaintiff should already know, such as the actual information allegedly accessed by John Barbarise, how and why that information held competitive value, and why it is supposedly "inevitable" that Defendants will use the so-called "Plaza Marine Trade Secrets." None of these facts are pleaded, nor has Plaintiff pointed the Court to anything beyond bald assertions that information is "unique" or "proprietary."

If Plaintiff's claims are viable, Plaintiff should be able to plead these basic facts. If Plaintiff cannot plead these facts, as the Amended Complaint confirms, then the claims are not viable. Either way, calling out Plaintiff's failure to allege facts it *knows* is entirely proper at the Rule 12 stage.

Plaintiff emphasizes the holding in *Oakwood*, but that case is not a permission slip for a plaintiff to merely label its information "confidential" and "proprietary" and lob a "belief" that defendants misappropriated it. *Oakwood* confirms that trade-secret claims are subject to Rule 12 pleading standards. And critically, subsequent courts from this District applying *Oakwood*, including *Signet*, *Greenstar*, and *Amar*, have held that labels and generalized assertions of "trade secrets" and misappropriation fail to state a claim. Those post-*Oakwood* cases dictate that a plaintiff must plead facts identifying what was protectable, how it was allegedly misappropriated, and why the information qualifies for trade-secret protection.

Plaintiff has not done that here. It dedicates only a few sentences to the holding in *Signet* and a cursory footnote in response to *Greenstar* and *Amar.* Pl's. Br. at 20-21, 22 n.9. Rather than identify well-pleaded allegations in response to Defendants' motion, Plaintiff leans on the case's procedural history and the Amended Complaint's conclusory assertion that it would be impossible for Defendants to enter the marketplace without misappropriating Plaintiff's purported trade secrets. First Amended Complaint ("FAC") ¶ 87. None of those arguments substitute for *factual allegations*, and Plaintiff cannot use the procedural posture of the case to fill its pleading gaps. The motion should be granted.

## REPLY ARGUMENT

### I. Plaintiff Doubles Down on Labels, Not Facts.

Instead of citing facts alleged in the Amended Complaint, Plaintiff relies upon an adjective-laden pleading strategy. For example, Plaintiff cites its allegations that its "Customer Lists" contain "significant *confidential* information," and that its "profit margin for each particular customer is a *proprietary* calculation." Pl's. Br. at 16-17 (emphasis added). Plaintiff does the same for its other purported trade secrets, citing its allegations that its "Vendor Financial Information" is "*proprietary* information" and that it has "developed *custom* pricing strategies and formulas." *Id.* (emphasis added).

Plaintiff does not cite facts supporting an inference that any of the so-called "Plaza Marine Trade Secrets" hold independent economic value or otherwise qualify as a protectable trade secret. Plaintiff's reliance on calling its alleged trade secrets "confidential," "proprietary," and "custom" ignores the holdings in *Signet, Greenstar*, and *Amar*, each of which applied *Oakwood* and nevertheless held that labeling information confidential or proprietary was insufficient to state a trade secret theft claim. *See* Defs.' Initial Br. at 15-20 (citing cases).

Plaintiff cannot meaningfully distinguish those cases in its opposition brief. Plaintiff offers only a single substantive comment regarding *Signet*—a bald claim that Plaintiff has "developed business secrets" such as "customer-specific Business Plans and pricing strategies" that are allegedly "unique" and "with no equivalent in the marketplace." Pl's. Br. at 20. Plaintiff does not cite any paragraphs of the Amended Complaint for that assertion. *Id.* And in any case, nothing in the Amended Complaint establishes how or why Plaintiff's "Business Plans" and "pricing strategies" present economic value or otherwise qualify as a protectable trade secret. Instead of citing facts, Plaintiff offers labels.

Plaintiff also ignores its admissions about when its purported trade secrets lose value in the marketplace. Pricing formulas can be trade secrets, but using the words "pricing formula" does not automatically satisfy the pleading standard. Plaintiff still must plead facts showing that the alleged formula is actually secret,

derives independent economic value from secrecy, and remained competitively useful at the time of alleged misappropriation.

Here, Plaintiff concedes its pricing strategies, formulas, and profit margins depend on "market conditions at time and place of bid," and that the bidding process concludes within hours or days. FAC ¶¶ 22–24. These admissions make it implausible that pricing or margin information known to John Barbarise on May 31, 2023 remained competitively useful 13 months later, when Ankora Fuels first began competing. This is not a "summary judgment" argument—it is based upon admissions in the Amended Complaint and Plaintiff's failure to plead the economic value of its purported trade secrets. Those are classic Rule 12 arguments, and as *Oakwood* made clear, a plaintiff must plead facts to establish that its purported trade secrets consist of "information with independent economic value." *Oakwood Lab'ys v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021).[1]

## II. Plaintiff's Misappropriation Theory Relies On Speculation, Not Plausible Inferences.

Plaintiff does not allege that John Barbarise downloaded, copied, or otherwise possessed any alleged trade secret beyond information supposedly "in his head" as

[1] *Oakwood* also involved readily distinguishable alleged facts. The plaintiff alleged highly technical trade secrets "related to its development of a microsphere system for drug delivery" and "peptide-specific release profiles." The plaintiff also attached exhibits to its complaint containing alleged trade secrets it had disclosed to the defendants pursuant to a confidentiality agreement. *Oakwood*, 999 F.3d at 905. No such allegations are in this case, nor does Plaintiff attach trade secret exhibits.

of his final day of employment on May 31, 2023. To bridge that pleading gap as to the moving Defendants, Plaintiff relies on two theories: first, that Zachary Barbarise *may* have disclosed information to John Barbarise during phone calls; and second, that Defendants' use of Plaintiff's alleged trade secrets is somehow "inevitable." Neither theory is sufficiently pleaded.

**A. Zachary Barbarise's Phone Calls with John Barbarise**

Plaintiff's "phone calls" theory does not state a claim for trade secret misappropriation.

As a threshold problem, Plaintiff does not adequately plead that Zachary Barbarise accessed protectable trade secrets. Plaintiff's opposition brief points to Zachary Barbarise's alleged access of "The Key to Quoting," a document supposedly containing formulas that reveal Plaza's "confidential pricing model," but Plaintiff does not plead facts showing that those formulas are not generally known in the industry, that they derive independent economic value from secrecy, or why they remained competitively useful beyond the expiration of the bidding process, which Plaintiff concedes ends in just a few hours or days. Pl's. Br. at 10; FAC ¶¶ 22-23. Plaintiff also points to a "Price Sheet Distribution List" accessed by Zachary Barbarise during his employment, but Plaintiff does not plead what supposedly confidential customer information appeared in that list, which customers were identified, or how the list could be used by a competitor. *Id*. And Plaintiff alleges

that Zachary Barbarise used the copy function on "large amounts of data within Excel," but Plaintiff does not plead *anything* about what information was allegedly copied, whether it was confidential, or how it had competitive value. *Id.* This information is in Plaintiff's possession, but it is omitted from the Amended Complaint. Accordingly, the Amended Complaint fails to plead that Zachary Barbarise accessed protectable trade secrets—a factual predicate for the "phone calls" misappropriation theory against John Barbarise and the corporate Defendants.

Even assuming *arguendo*, however, that the Amended Complaint adequately pleaded trade secret access by Zachary Barbarise, the Amended Complaint still does not bridge the information gap between Zachary Barbarise and John Barbarise (or any of the other moving Defendants). The Amended Complaint does not allege what, if any, alleged trade secrets Zachary Barbarise disclosed to John Barbarise, which of the Defendants supposedly used the alleged trade secrets, or how (if at all) the alleged trade secrets could be competitively useful to any of the Defendants. Plaintiff does not allege, for example, that Zachary Barbarise accessed information about a particular customer and then, shortly after a call with John Barbarise, one or more of the Defendants underbid Plaintiff with a customer, obtained that customer's business, or otherwise used the same information in the marketplace. Nor does Plaintiff allege that any customer identified in a file accessed by Zachary Barbarise was later lost to any of the Defendants, or lost by Plaintiff at all.

Instead, Plaintiff asks the Court to infer that the moving Defendants received and used trade secrets based upon phone calls between two brothers, one of whom was still performing job duties for Plaintiff at the relevant times. The mere fact that Zachary Barbarise allegedly spoke with John Barbarise by phone with work files open on his computer does not support a plausible inference of trade secret misappropriation. It is speculation layered on speculation.

If Plaintiff's "phone calls" theory was plausible, Plaintiff should have pleaded the missing facts within its knowledge, including what Zachary Barbarise accessed, how the information was competitively valuable, and what if any marketplace events occurred to create an inference of trade secret use. None of those facts appear in the Amended Complaint. Without more, Plaintiff has not moved its "phone calls" theory from speculative to plausible. At most, it alleges the mere possibility of misconduct, which is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

**B. The Allegedly Inevitable Disclosure of Trade Secrets**

Confronted with the lack of facts establishing actual use of protectable trade secrets, Plaintiff invokes the "inevitable disclosure" doctrine. Pl's. Br. at 30-32. Inevitable disclosure is generally used to support injunctive relief where actual use cannot yet be shown. *Osteotech, Inc. v. Biologic, LLC*, No. 07-cv-1296 (JAP), 2008 WL 686318, at *3 (D.N.J. Mar. 7, 2008). But it is also generally limited to injunctive relief applications—specifically for the irreparable harm element. *Id.*

The case at bar has been pending for more than two years, Plaintiff has never sought preliminary injunctive relief, and yet, the Amended Complaint still pleads no facts showing actual use. Plaintiff cites the supposed "speed" with which John Barbarise created Ankora Fuels and the fact that Ankora competes with Plaza (Pl's. Br. at 24), but Plaintiff concedes that Ankora Fuels entered the market 13 months after he resigned. FAC ¶¶ 38, 125-126. The Amended Complaint is silent as to why competition more than a year after John Barbarise resigned makes trade secret misappropriation inevitable.

Further, if John Barbarise's use of trade secrets was somehow inevitable when Plaintiff filed its Original Complaint on August 23, 2024 (ECF No. 1), then Plaintiff should no longer need to rely on inevitable disclosure in its Amended Complaint filed more than 18 months later on March 9, 2026. The inevitability period has passed. Plaintiff should have pleaded actual misappropriation by now.[2]

---

[2] Plaintiff's reliance on this Court's decision in *Fora Fin. Holdings, LLC v. Dream Data Servs., LLC* is misplaced. Pl's. Br. at 28. The plaintiff in *Fora* alleged, among other things, that customers complained of suspected misuse of their confidential commercial loan information. *Fora*, 2023 WL 6049835, at *2 (D.N.J. 2023). The plaintiff further alleged it planted a "honeypot," through which competitors unknowingly contacted plaintiff's employees posing as customers. *Id*. The honeypot eventually identified the defendant as the party misappropriating the confidential information at issue. Here, however, there are no alleged customer complaints and no "honeypot" or other direct evidence of actual trade secret use.

## III. The Tortious Interference Claims Fail Because Plaintiff Pleads Conclusions, Not Tortious Conduct or Causation.

Plaintiff's tortious interference claims suffer from the same defect as its trade secret claims. Plaintiff repeatedly alleges that John Barbarise "deterred," "undermined," or "usurped" business opportunities, but it does not plead what he actually said, did, failed to do, or caused. Those are not factual allegations. They are conclusions using the vocabulary of tortious interference.

### A. [redacted]: No Agreement, No Terms, No Timing, No Causation

Plaintiff's opposition brief states that "John knew Plaza's agreement with [redacted] was set to expire September 2024." Pl's. Br. at 7. The Amended Complaint, however, demonstrates that this is dead wrong. Plaintiff does not allege *any* agreement between [redacted] and Plaintiff. Ankora Fuels—not Plaintiff—had a pre-existing contract with [redacted] that expired in September 2024. FAC ¶ 96.

Whether deliberate or otherwise, this error in Plaintiff's opposition brief exposes the defect in the [redacted] claim—Plaintiff does not plead a prior agreement, a term sheet, or even a prior course of dealing with [redacted]. There are no facts to support its bald assertion of a "long standing relationship" with [redacted], such as allegations about the volume or nature of any prior business transactions. *Id.* ¶ 92. Accordingly, Plaintiff has not pleaded a reasonable expectation of economic advantage with [redacted]. That defect is a threshold bar to its claim.

For tortious interference and causation, Plaintiff relies on a conclusory allegation that John Barbarise "was aware" of Plaintiff's alleged pursuit of barges and tugboats from [redacted], including the terms and conditions upon which Plaintiff sought to acquire the equipment. *Id.* ¶ 97. The Amended Complaint alleges nothing about when Plaintiff allegedly pursued the [redacted] transaction, the terms allegedly known to John Barbarise, or how John Barbarise supposedly used his knowledge of the terms to divert the transaction to Ankora Fuels, *e.g.*, whether Ankora Fuels underbid Plaintiff for [redacted]'s equipment. Nor does Plaintiff plead it was on the verge of acquiring the [redacted] equipment, only to have the opportunity snatched away by Ankora Fuels. Plaintiff does not even allege *when* it pursued the equipment or whether it conducted any negotiations with [redacted]. These missing facts (if they exist) should all be known to Plaintiff. It should have pleaded them.

**B. [redacted]: "Deterred" Is Not Tortious Conduct**

Plaintiff's [redacted]-related argument in its opposition brief conflicts with the [redacted]-related allegations in the Amended Complaint:

- Plaintiff cites an allegation that John Barbarise "threatened to spread damaging lies to [redacted]," but the Amended Complaint does not actually allege that John Barbarise threatened to publish a false statement—only that John Barbarise suggested he might tell [redacted] that Plaintiff "mistreated them." *Compare* Pl's. Br. at 34 *with* FAC ¶ 107. Plaintiff does not allege that was false.

- Plaintiff argues that John Barbarise "carried out that threat," but Plaintiff does not actually allege John Barbarise said *anything* to [redacted]—only that he took meetings with [redacted]. *Compare* Pl's. Br. at 34 *with* FAC ¶ 112.[3]
- Plaintiff argues that John Barbarise "used Plaza's trade secrets to undermine Plaza's longstanding relationship with [redacted]," but the Amended Complaint does not allege *use* of any [redacted]-related trade secrets or *how* such information could be used to force [redacted] to cut ties with Plaintiff—it alleges only that John Barbarise was aware of Plaintiff's "confidential methodology used to calculate each of the deals" [redacted] audited. *Compare* Pl's. Br. at 34 *with* FAC ¶ 111.

Without any concrete facts of John Barbarise's alleged actions with [redacted], Plaintiff is compelled to lob a bald assertion that John Barbarise "deterred [redacted] Brothers from renewing its contract with Plaza Marine." FAC ¶ 113. Alleging that John Barbarise "deterred [redacted]" is not a factual allegation. It is no different than alleging John Barbarise "tortiously interfered"—a conclusion for which Plaintiff must plead supportive facts. Plaintiff should, at minimum, plead the supportive facts within its knowledge, including when the audited transactions occurred (*e.g.*, whether they occurred during or after John Barbarise's employment with Plaintiff),

[3] Nor would merely telling a third party that a competitor "mistreated them" be a tortious act. Therefore, even if the Court assumes that John Barbarise told [redacted] that Plaintiff mistreated them (which is *not* alleged in the Amended Complaint), it still does not establish tortious interference.

whether Plaintiff's financial reporting to [redacted] for the audited transactions was accurate, and how John Barbarise could have possibly used [redacted]-related "trade secrets" to cause [redacted] not to renew its contract with Plaintiff.[4]

**C. [redacted]: "Purposefully Failed to Secure a Deal" Is Not Enough**

Defendants did not waive any argument regarding the [redacted] allegations. Defendants' moving brief argued why the [redacted] allegations fail to state a claim. Defs.' Initial Br. at 36-38. Plaintiff received notice of Defendants' arguments.

Plaintiff cannot avoid one simple truth—the only allegation regarding [redacted] is that John Barbarise "purposefully failed to secure a particular deal in his final year working for Plaza Marine." FAC ¶ 192. This is insufficient. As Plaintiff concedes, the "particular deal" with [redacted] was consummated by a non-party to this action, [redacted]. The out-of-district cases cited by Plaintiff are distinguishable. Those cases involved specific allegations of competitive activities during employment, not afterwards. *See, e.g., DelphX Corp. v. Fondren*, 600 F. Supp. 3d 540, 549 (E.D. Pa. 2022) (while still employed by plaintiff, employee used competitive company to market securities products that belonged to his employer); *Liberty Mut. Ins. Co. v. Gemma*, 301 F. Supp. 3d 523, 536-37 (E.D. Pa. 2018)

[4] As Plaintiff is aware, all of the transactions audited by [redacted] occurred in 2024, approximately a year *after* John Barbarise had already resigned from employment at Plaintiff. *See* ECF 242-1 (identifying transactions audited by [redacted]). Plaintiff should have pleaded, among other things, *when* the audited transactions occurred. But instead, it chose to omit this *known* information.

(employee promoted competitive enterprise while still employed by plaintiff). Meanwhile, here, Plaintiff merely alleges that John Barbarise failed to consummate a "deal," which eventually went to a non-party. FAC ¶ 192.

Plaintiff should plead supportive facts (not conclusions) that are within its knowledge, such as what John Barbarise allegedly did or did not do to supposedly kill the [redacted] deal. The Amended Complaint omits any allegation that John Barbarise failed to respond to an inquiry from [redacted], that he did anything to torpedo the deal, or that Plaintiff was on the verge of closing a deal. If Plaintiff cannot plead such facts, which appears likely, then its claims related to [redacted] are speculative at best and do not satisfy the pleading standard. Based on the current pleading, John Barbarise does not have adequate notice of what he supposedly did (or did not do) to prevent Plaintiff from securing a deal with [redacted].

## IV. Plaintiff's Footnote Does Not Address the Group Pleading Defects.

Plaintiff's response to the group-pleading argument is relegated to a footnote. The string cites therein do not address the real issue at hand—Plaintiff does not allege specific conduct by any of the four Defendants that were added for the first time via the Amended Complaint ("New Defendants"). The Amended Complaint omits what the New Defendants allegedly did, acquired, used, disclosed, or benefitted from. The only specific allegations related to the New Defendants are dates of formation and facts relevant to jurisdiction and venue.

Plaintiff's hub-and-spoke theory is chronologically implausible. Three of the New Defendants were not formed until February 14, 2025. FAC ¶ 66. The New Defendants did not exist for the bulk of the allegations in the Amended Complaint, including Zachary Barbarise's alleged computer server activities, further undercutting the use of shotgun pleading or a vicarious liability theory here. *Cf. Longmeadow One Solar LLC v. Trina Solar Co*., No. 24-03223 (GC) (JBD), 2025 WL 2476522, at *4 (D.N.J. Aug. 28, 2025) (rejecting group pleading argument where, unlike here, the plaintiff alleged one defendant sold "modules" to the plaintiff and another defendant issued a product warranty for the modules).

## V. The Contract-Based Claims Should Be Dismissed.

John Barbarise did not waive arguments for the dismissal of the breach of contract and tortious interference with contract claims. He incorporated by reference his arguments for the other claims, which demonstrate that the contract and tortious interference with contract claims should also be dismissed. That is not an intentional waiver of rights. Plaintiff has notice of these arguments via Defendants' moving brief. It was incumbent upon Plaintiff to explain how the contract and tortious interference with contract claims could survive dismissal of the other claims. Plaintiff instead chose an unsupported waiver argument.

**VENABLE LLP**

By: Allison Gotfried

Allison B. Gotfried (No. 072292014)
151 West 42nd Street, 49th Floor
New York, New York 10036
Tel.: (212) 370.6227
Fax: (212) 307.5598
abgotfried@venable.com

-and-

Leonard L. Gordon*
Nicholas M. Reiter*
151 West 42nd Street, 49th Floor
New York, New York 10036
Tel.: (212) 370.6296
Fax: (212) 307.5598
llgordon@venable.com
nmreiter@venable.com

*Counsel to Ankora Fuels, LLC, John Barbarise III, Ankora Marine Holdings LLC, Ankora Marine Transport LLC, Diane Joseph LLC, and Stephen Blanche LLC*

*admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I certify that on this day, September 2, 2026, I served the above Reply Memorandum of Law in Further Support of Defendants Ankora Fuels, LLC, John Barbarise, Ankora Marine Holdings, LLC, Ankora Marine Transport, LLC, Diane Joseph LLC, and Stephen Blanche LLC's Motion to Dismiss Plaintiff Plaza Marine, Inc.'s Amended Complaint pursuant to FRCP 12(b)(6) and Motion for Judgment on the Pleadings pursuant to FRCP 12(c), dated September 2, 2026, on all appearing counsel via ECF filing.

Dated: September 2, 2026

**VENABLE LLP**

By: /s/ Allison B. Gotfried
Allison B. Gotfried (No. 072292014)